# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILMER GARCIA GUERRERO,
            Petitioner,

v.                                         Case No. 25-CV-1975

DALE J. SCHMIDT,
            Respondent.

## DECISION AND ORDER

About four years ago, Wilmer Garcia Guerrero, who is a citizen of Venezuela and Columbia, entered the United States without inspection by immigration officials. He has been living in the United States ever since. During a routine check-in on October 16, 2025, U.S. Immigration and Customs Enforcement (ICE) personnel arrested him. He remains in ICE custody at the Dodge County Jail, under the authority of Dodge County Sheriff Dale J. Schmidt.

Persons like the petitioner, who entered the United States without inspection but are found in the United States months or years later, had long been eligible for release on bond while removal proceedings are pending. However, the Department of Homeland Security on July 8, 2025, announced a new policy requiring ICE to treat every person who entered the United States without inspection as an "applicant for admission" under 8 U.S.C. § 1225(a)(1) regardless of how long the person had been present in the United States. *See Martinez v. Hyde*, 792 F. Supp. 3d 211, 217 n.10-11 (D. Mass. 2025). The Board of Immigration Appeals on September 5, 2025, concluded

that immigration judges lacked the authority to consider requests to release on bond persons who entered the country without inspection. *Matter of Hurtado*, 29 I. & N. Dec. 216, 229.

Subsequently, hundreds of persons detained under this new policy have filed petitions for writs of habeas corpus in federal courts around the country. Although courts have generally granted these petitions, a split has developed, including within this district. *Compare Ramirez Valverde v. Olson*, No. 25-CV-1502, 2025 LX 498566 (E.D. Wis. Oct. 29, 2025) (granting petition); *López de la Cruz v. Schmidt*, No. 25-CV-1562-LA, ECF No. 18 (E.D. Wis., Nov. 19, 2025) (same); *Alonso v. Olson*, No. 25-CV-1660, 2025 LX 599399 (E.D. Wis. Nov. 20, 2025) (same); Badillo Tejeda v. Noem, 25-cv-01995-LA, ECF No. 7 (Jan. 5, 2026), *with Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 LX 439596 (E.D. Wis. Oct. 30, 2025) (denying petition); *Ugarte-Arenas v. Olson*, No. 25-C-1721, 2025 LX 500076 (E.D. Wis. Dec. 8, 2025) (same).

Before turning to the statutory text, the court pauses to define the question presented. Courts across the country, including within this district, have reached differing conclusions as to whether 8 U.S.C. § 1225(b)(2) mandates detention without a bond hearing for noncitizens who initially entered the United States without inspection but who have since lived here for years. While a substantial number of district courts have concluded that such individuals remain eligible for bond hearings under 8 U.S.C. § 1226, some courts have reached the opposite conclusion. The parties have not identified any court of appeals decision addressing the issue on the merits.

2

No party argues, and no court has suggested, that Congress lacks the authority to mandate detention of noncitizens who pose a danger to the community or a serious risk of flight. Nor is this case about whether the petitioner must be released. Rather, the question is whether the petitioner is entitled to a bond hearing.[1] If afforded an individualized bond hearing, he very well may ultimately be detained.

The crux of the matter is whether the mandatory detention provision of 8 U.S.C. § 1225 applies to persons like the petitioner who entered the United States without inspection years ago and now find themselves facing removal. Specifically, 8 U.S.C. § 1225(b)(2)(A) states:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Roughly two months ago this court granted a substantively identical petition in *Ramirez Valverde*, 2025 LX 498566. The respondent recently appealed that decision, and the court looks forward to soon having controlling authority on which to rely to resolve what have become common petitions in this district. But for the time being, that appeal remains pending and the question undecided in the circuit. *See* 7th Cir. Case No. 25-3316; *see also Castañon-Nava v. United States Dep't of Homeland Sec.*, No. 25-3050, 2025 U.S. App. LEXIS 32488, at *21-22 (7th Cir. Dec. 11, 2025) (discussing 8 U.S.C. § 1225(b)(2)(A) and holding that the defendants are unlikely to

---

[1] Admittedly, the petitioner ultimately asks the court to order his release. But he seeks this relief only in light of the limited nature of the habeas remedy and only if he is not afforded an individualized bond hearing.

3
Case 2:25-cv-01975-BBC    Filed 01/07/26    Page 3 of 8    Document 10

prevail on their argument that the statute requires detention of aliens already in the United States).

Having closely reviewed the respondent's brief in opposition (ECF No. 7) and intervening decisions of courts that have addressed this issue, particularly the decisions in *Rojas*, 2025 LX 439596, and *Ugarte-Arenas*, 2025 LX 500076, the court finds no reason to reach a different conclusion than it did previously. Accordingly, finding no legal or factual basis to distinguish the present petition from that in *Ramirez Valverde*, 2025 LX 498566, and finding no intervening authority meriting reconsideration, the court will grant the petition for a writ of habeas corpus.

As the court explained in *Ramirez Valverde*, 2025 LX 498566, it presumes that "a noncitizen who is present in the United States but who entered without inspection and authorization by an immigration officer is 'an applicant for admission' under Chapter 12 of Title 8." *Ramirez Valverde v. Olson*, No. 25-CV-1502, 2025 U.S. Dist. LEXIS 213128, at *5 (E.D. Wis. Oct. 29, 2025). The wrinkle is that the mandatory detention provision uses a distinct phrase. "Only 'an alien seeking admission' who 'is not clearly and beyond a doubt entitled to be admitted' must be detained." *Id.* (quoting 8 U.S.C. § 1225(b)(2)(A)).

Perhaps Congress used "an alien seeking admission" as a synonym for "applicant for admission." That is plausible, and some courts have found precisely that. *See, e.g.*, *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 U.S. Dist. LEXIS 213983, at *24 (E.D. Wis. Oct. 30, 2025). But why would Congress take care to define the term "applicant for admission," *see* 8 U.S.C. §§ 1101(a)(13)(A), 1225(a)(1), and use it

throughout the section, only to introduce a new term—"alien seeking admission"—at the crucial point of specifying who must be detained?

It is worth underscoring that as a matter of immigration law, *see Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018), and foundational liberty, eligibility for bond is the default. Courts must be cautious to read Congress's use of "alien seeking admission" as merely a sloppy synonym for "applicant for admission" when the consequence is a dramatic expansion of mandatory detention. Rather, when Congress uses different terms, courts presume that it intended different meaning. *Ramirez Valverde*, 2025 U.S. Dist. LEXIS 213128, at *6 (citing *Statutory Interpretation in the Federal Courts* § 3.05[2][c]). The respondent has not pointed the court to anything in the text or legislative history of the statute to suggest that Congress intended the terms to be synonymous.

But just because "alien seeking admission" is distinct from "applicant for admission" does not mean that the petitioner is entitled to relief. He must still prove that he is not an "alien seeking admission" and thus not subject to mandatory detention.

The term "an alien seeking admission" denotes the present tense and connotes an immediacy vis-à-vis the time of the alien's arrest. The most natural reading of the mandatory detention subsection, 8 U.S.C. § 1225(b)(2)(A), is that Congress intended it to apply only to the traditional scenario of an alien who presents himself for inspection and seeks admission and not the alien who, despite entering without inspection, has been present in the United States for years. The overall structure of

section 1225 further suggests that Congress never intended the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) to apply to persons like the petitioner who have been present in the United States for years before their arrests.

At first glance, this distinction may strike some as counterintuitive. A person who presents himself for inspection and seeks admission is subject to automatic detention, while a person who enters without inspection and is later apprehended may be eligible for release on bond. But that distinction is rational when viewed in light of the fact that the primary purpose of bond is to assure a person's appearance for future proceedings.

Notwithstanding his initial unlawful entry, a person who has been in the United States may be regarded as more likely to have the personal and community ties that make him suitable for release on bond. Notably, the petitioner was arrested when he voluntarily appeared at a check-in with ICE. When viewed in light of considerations such as the significant expense to the government that results from detention, it is reasonable that Congress did not want to categorically bar release for persons who would appear as required if released.

In this respect it is important to again emphasize that the petitioner is not directly seeking release. He is seeking merely an individualized bond hearing. There may well be reasons why the petitioner will not ultimately be eligible for release; the court's concern is only whether he is entitled to a hearing. Because the sole basis for denying him a hearing was the erroneous conclusion that, by having entered the United States without inspection he is "an alien seeking admission" under 8 U.S.C.

§ 1225(b)(2)(A), the court will grant his petition. Provided he is afforded an individualized hearing, whether he will be released will be up to the Immigration Judge.

The Supreme Court's statements in *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018), do not mandate a different conclusion. There, the Court said, "In sum, §§1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Id*. But the Court was addressing the application of the mandatory detention provision to a person detained at the border (*i.e.*, a person who was undisputedly "an alien seeking admission"), and not a person like the petitioner who had been living in the United States for years. In fact, at oral argument the government repeatedly assured the Court that only persons who were detained at the border would be detained without a bond hearing. *See, e.g., Jennings v. Rodriguez*, 2017 WL 4517127 (U.S.), 10-12 (U.S. Oral. Arg., 2017) (oral argument of Malcolm L. Stewart, Deputy Solicitor General); 2016 WL 6996473 (U.S.), 7-8 (U.S. Oral. Arg., 2016) (oral argument of Ian H. Gershengorn, Acting Solicitor General);[2] *see also López de la Cruz*, ECF No. 18 at 11-12 (noting that for nearly 30 years, across five presidential administrations and including the first Trump administration, DHS applied the statutes so that persons like the petitioner had been eligible for bond).

Because the petitioner is not an "alien seeking admission" under 8 U.S.C. § 1225(b)(2)(A), he is not subject to mandatory detention. There is nothing to indicate

---

[2] The case was argued initially on November 30, 2016, and reargued on October 3, 2017.

7
Case 2:25-cv-01975-BBC    Filed 01/07/26    Page 7 of 8    Document 10

that he is otherwise statutorily ineligible for bond. *See* 8 U.S.C. § 1226(c)(1). Rather, he is subject to 8 U.S.C. § 1226, and due process requires that he be afforded a bond hearing. *See Ochoa v. Noem*, No. 25 CV 10865, 2025 U.S. Dist. LEXIS 204142, at *15 (N.D. Ill. Oct. 16, 2025) (discussing, in part, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) and *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Consequently, his continued detention without a bond hearing is in violation of the law of the United States.

Accordingly, the court will grant the petition for a writ of habeas corpus and order the respondent to, within five business days, either afford the petitioner a bond hearing in accordance with 8 U.S.C. § 1226, and 8 C.F.R. § 1236.1 or release the petitioner.

**IT IS THEREFORE ORDERED** that Wilmer Garcia Guerrero's petition for a writ of habeas corpus is granted. Within five business days of this order the respondents must either: (1) provide Garcia Guerrero with a bond hearing before an Immigration Judge, at which the government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Ramirez Valverde's continued detention; or (2) release Garcia Guerrero from custody under reasonable conditions of supervision. The Clerk shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 7th day of January, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge